# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2519EM

_____

Victorija Smith,                          *
                                          *
          Appellant,                      *
                                          *
     v.                                   *
                                          *  On Appeal from the United
                                          *  States District Court
St. Louis University, a                   *  for the Eastern District
Missouri Benevolent Corporation           *  of Missouri.
Operating as St. Louis                    *
University Hospital and School            *
of Medicine,                              *
                                          *
          Appellee.                       *


_____

Submitted:  January 13, 1997

Filed:  March 24, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BEAM, Circuit Judge, and ALSOP,[*]
     District Judge.

_____


RICHARD S. ARNOLD, Chief Judge.


     Victorija Smith filed this action for employment discrimination
against St. Louis University under 42 U.S.C. §§ 2000e-1 to 2000e-17 and Mo.
Rev. Stat. § 213.010-.095.  She alleged that the University had
discriminated against her on the

---

[*]The Hon. Donald D. Alsop, United States District Judge for
the District of Minnesota, sitting by designation.

basis of sex by subjecting her to sexual harassment, and that it had retaliated against her for complaining about the harassment.  The District Court granted summary judgment for the University on both claims.  Smith now appeals.  Because the evidence she presented was sufficient to survive summary judgment on both claims, we reverse and remand.

I.

Victorija Smith was an anesthesiology resident at St. Louis University's Hospital and Medical School from July 1991 to June 1994.  She presented evidence to the District Court, which we here view most favorably to her, that the chairman of the Anesthesiology Department, John Schweiss, repeatedly spoke derogatorily to her because of her gender.  Smith contends that the pervasiveness and severity of these comments created a hostile work environment that altered the terms or conditions of her employment.

Smith, in her deposition, recounted numerous harassing or discriminatory comments by Schweiss.  For example, Schweiss regularly referred to Smith and other female residents by their first name, or without the title "Doctor," while using "Doctor" and last names for male residents.  This began on the first day of orientation and continued in front of her colleagues, patients, nurses, and guest lecturers.  Smith took this as a signal that Schweiss did not consider her deserving of recognition as a fellow professional.  She was told by other doctors that Schweiss had told them that he had selected Smith in order to fill his female quota, and thus to avoid charges of discrimination.  These doctors agreed, claiming that "you girls are here because it's about time he hired some good looking girls."  Schweiss and these doctors at various times told Smith she was attractive, a "beautiful young lady," and should consider modeling.  Smith also alleged that Schweiss

referred on another occasion to her and another female resident as the "anesthesia babes."

Smith stated that Schweiss complained several times he was "stuck with Vicki again" and "had to work with another female resident." In the operating room with Smith (as well as at lunch with her in the doctor's lounge), Schweiss asked her why she had gone into medicine rather than nursing, or getting married. He also asked why she was so assertive, and why she polished her nails. At another time, Schweiss opined to her that women ought to be married and home nursing babies, and compared her unfavorably to the wife of another doctor who stayed home to raise their children. He further suggested, however, that Smith, because of her age and medical training, would not be able to find a husband. Smith also stated that Schweiss altered his rotation schedule so that he would be around her, in order that he might subject her to additional ridicule, or, as another doctor put it, "to get to" her.

Smith explained that she was hospitalized twice, in December 1993 and March 1994, as a result of stress from the harassment by Schweiss. She also testified in her deposition that she had suffered emotional trauma and frequent crying because of the harassment.

Smith's second claim alleged that Schweiss had given negative reviews of her to two prospective employers, in retaliation for her complaining to the University about his harassing behavior. Schweiss gave these reviews after Smith's residency had ended. Schweiss's conversations with these employers led them to question Smith about the nature of her relationship with Schweiss at their interviews of her. One of them asked whether Smith was considering legal action, after noting that Schweiss had not had very nice things to say about her. Smith was not hired by those employers.

Although the harassment allegedly began before the start of her residency, Smith waited until November of 1993, during the final year of her residency, to complain to the Dean of Student Affairs. Her complaint was prompted by a letter of recommendation written by Schweiss that referred to Smith's marital status. Schweiss's secretary showed Smith the letter because she thought that its reference to Smith's being single was immaterial to her qualifications. Smith claims that her delay stemmed in part from a fear of being fired, which would be "disastrous" to her career.[1] The Dean of Student Affairs met with Smith in January 1994, and then referred Smith to the Dean of the Medical School, to whom Smith detailed her complaints in February. This Dean met with Schweiss in March 1994 to discuss Smith's complaints about him. The Dean then reported back to Smith in April, telling her that she had admonished Schweiss not to retaliate against Smith, and that she had requested that Schweiss monitor the Department for discriminatory comments and prevent their recurrence.

The District Court granted the University's motion for summary judgment on Smith's hostile-environment claim because it thought the conduct was not sufficiently severe or pervasive. The Court held that the absence of sexually explicit comments lessened the severity of the harassment, and that the comments were not sufficiently frequent to establish pervasiveness. The Court further explained that the comments were not threatening, but rather were merely offensive and often not gender-based. The Court also held that the conduct did not interfere with Smith's work performance, any emotional harm notwithstanding. The District Court also held that the remedial action taken by the University

---

[1]Schweiss admitted that he had considered firing Smith, but said he decided not to because it would be "inappropriate and unfair," as it would "compromise[]" her ability to get a job.

-4-

was both prompt and adequate, and thus created a defense to liability. Because the District Court held that Smith had failed to establish either severity or insufficient response, it held that Smith's claim of a hostile work environment must fail as a matter of law.

The District Court also granted summary judgment on Smith's retaliation claim. The Court explained that six months went by from when Schweiss was admonished by the Dean of the Medical School to the time he made his negative comments about Smith. The Court held this period to be too long for Smith to establish a causal connection between the protected Title VII activity and the adverse employment action. It separately held that to the extent Smith's claim involved post-employment retaliation, Title VII did not provide a cause of action. Smith then took this appeal.

We review the evidence Smith has presented de novo to determine whether there are genuine issues of material fact that would make summary judgment inappropriate. We have explained before "that summary judgment should seldom be used in employment-discrimination cases." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994). The evidence Smith has presented creates triable issues of fact both on the severity and pervasiveness of the harassment and on the adequacy of the response the University took to Smith's complaints. Likewise, the evidence on retaliation that Smith has adduced should be presented to a jury. We address the two claims separately.

II.

Title VII has been interpreted to provide a cause of action for discrimination "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is

-5-

'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).[2]  The parties do not dispute that Smith has shown the first three elements she must prove to succeed on her claim: that Smith is in a protected group, that Smith was subjected to unwelcome harassment, and that the harassment was based on sex.  <u>E.g.</u>, <u>Hall v. Gus Constr. Co.</u>, 842 F.2d 1010, 1013 (8th Cir. 1988).  The parties contest the remaining two elements of proof:  whether the harassment affected a term, condition, or privilege of Smith's employment, and whether the University knew or should have known of the harassment, and failed to take proper remedial action.  <u>Ibid.</u>

A.

The facts that Smith adduced would allow a reasonable jury to conclude that the conditions of Smith's employment were altered by the harassment.  While offensive comments alone may not create a hostile work environment, Smith need not show that they "cause[d] a tangible psychological injury" to succeed on her claim.  <u>Harris</u>, 510 U.S. at 22. Even conduct that "does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing their careers."  <u>Ibid.</u>  Smith has introduced evidence that Schweiss frequently and regularly made derogatory comments toward Smith and at least one other female resident.  Moreover, his comments commenced when Smith began her residency and continued virtually throughout her time at

---

[2]Because the standards governing Title VII actions guide actions under the Missouri Human Rights Statute, Mo. Rev. Stat. § 213.010-.095, our consideration of Smith's state-law claims is subsumed under our consideration of Smith's federal claims.  See <u>Tart v. Hill Behan Lumber Co.</u>, 31 F.3d 668, 671 (8th Cir. 1994).

the hospital. While Smith was not at all times working with Schweiss (her rotation schedule caused her to work with other doctors as well), Smith need not be exposed continually to the harassment to succeed on her claim; Schweiss was, moreover, the head of the Department, and therefore more omnipresent than a coworker might be. Furthermore, Smith presented evidence that others in the Department relayed some of Schweiss's comments to her. Finally, Smith showed she had been hospitalized twice, the cause of which remains in dispute, and had suffered depression because of the alleged harassment. We think that, if Smith were given the opportunity, a jury could reasonably find that Schweiss's harassment was sufficiently severe or pervasive to meet the Harris standard.

The District Court discounted the severity of the harassment because it was not sexually explicit. This, however, does not accord with our holding in Kopp v. Samaritan Health Sys., 13 F.3d 264 (8th Cir. 1993). In Kopp, a doctor was abusive and threatening to many of the staff, but rarely was the abuse couched in terms of sex or gender, and never was it sexually explicit. The plaintiff, however, presented evidence that women were more frequently the objects of the doctor's derision. There we explained that "[t]he predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature . . .. Rather, the key issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 269 (citations and internal quotations omitted); see also Hall, supra, 842 F.2d at 1014 ("Intimidation and hostility to women because they are women can obviously result from conduct other than explicit sexual advances."). Here, many of Schweiss's comments included gender-conscious terms, and therefore could reasonably be believed to have been directed at Smith because of her sex. The question that

remains is whether the abuse rose to the level required by <u>Harris</u> to be actionable under Title VII, a question that a jury should resolve.

B.

The District Court held that the University's response to Smith's complaint was proper and adequate as a matter of law. Smith argues that the University failed to take "prompt remedial action reasonably calculated to end the harassment," <u>Callanan v. Runyun</u>, 75 F.3d 1293, 1296 (8th Cir. 1996) (citations and internal quotations omitted), and therefore did not respond properly. We conclude that a genuine issue of fact exists as to whether the University failed to take proper remedial action.

The University's response took four months from the time Smith initially complained to when the Dean of the Medical School met with Schweiss, and seven weeks from the time she detailed her complaints to the Dean to the Dean-Schweiss meeting. The response was by no means immediate, and Smith should have the opportunity to argue to a jury that the response was not prompt enough (given all the circumstances), and thus made it not "proper" for some reason (such as, as she notes, because Smith's residency ended in June).[3] The University may offer a justification for the time it took to conclude its response to Smith's charges (such as the need to interview many witnesses, or that the pertinent investigators were

---

[3]Moreover, Smith may be able to demonstrate that the Medical School had constructive notice (whether because Schweiss occupied the top position within the Department, because the harassment was obvious to everyone, or because of some other reason) before Smith's initial complaint provided actual notice. The District Court should look to general "agency principles" in resolving this question of fact. See <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 72 (1986).

on vacation).  These are questions of fact that should be addressed to a jury.

Smith also contends that the University's response was inadequate because it was not "reasonably calculated to end the harassment." Kopp, supra, 13 F.3d at 269.  The Dean told Schweiss to monitor himself and the Department and report back on progress just before Smith ended her residency.  Smith's allegations were that Schweiss himself was the principal malefactor in the Department.  Placing the alleged harasser in charge of stopping the harassment may well have been inadequate, especially if, as Smith alleges, the harassment did not stop and Schweiss subsequently provided negative references to Smith's potential employers.  This, like promptness, is a factual dispute to be resolved by a jury.

### III.

The District Court granted summary judgment against Smith on her second claim, that she was retaliated against for having complained about sexual harassment.  To succeed, Smith must show that she complained of discrimination, that the University took adverse action against her, and that this adverse action was causally related to her complaint.  E.g., Marzec v. Marsh, 990 F.2d 393, 396 (8th Cir. 1993).  There is no question that Smith complained of discrimination, and a material issue of fact exists as to whether the Hospital took action against her, if, as she alleges, Schweiss commented negatively about her to prospective employers.  We think a factual issue also exists as to whether there is a causal connection between the two events.  Although the District Court held, and the University argues, that Title VII does not provide a cause of action for retaliation that took place after employment has concluded, the Supreme Court has now held that Title VII's protections from retaliation extend to former employees,

Robinson v. Shell Oil Co., 117 S. Ct. 843 (1997), and Smith may therefore recover for retaliation taken after her residency ended.

The District Court held that too much time elapsed between Smith's complaint and the alleged retaliation to demonstrate the requisite causal connection. Smith complained in November of 1993. The University spoke with Schweiss in March 1994 to tell him to stop his harassment. Smith presented evidence that Schweiss commented negatively about her in September and October 1994 to her prospective employers, and thereby caused them not to hire her.

Schweiss's motivation for commenting negatively upon Smith is not clear from the evidence. He could have done it because she complained of his harassment, because she was female, or because he believed she had only the qualifications he stated. Summary judgment here is particularly inappropriate, given that Smith's case will likely rely on inferences, rather than direct evidence, of Schweiss's motivation. See Crawford, supra, 37 F.3d at 1341. The passage of time may simply reflect that Schweiss no longer had an opportunity to retaliate against Smith at the Hospital because she had concluded her residency. We think a jury should decide whether Schweiss commented as he did about Smith because she had reported his harassment to the Medical School.

The University argues that we have before doubted that a six-month period between a protected action and the alleged retaliation could establish a prima facie case of retaliation. See Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992). In Rath, however, the plaintiff presented only the evidence of coincidental timing between his complaint about a proposed pension-plan change and his discharge, and the employer countered with evidence that the discharged plaintiff had performed his job unsatisfactorily. This case comes to us under different

circumstances, as the University has not adduced evidence that Schweiss's comments characterized accurately Smith's performance as a resident.  The passage of time between events does not by itself foreclose a claim of retaliation; rather, it weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.  Her evidence is thus more substantial than a plaintiff who shows only coincidental timing rebutted by legitimate justification, and Smith therefore should be allowed to present her evidence to a jury.

The University also argues that negative references are not adverse job actions.  We think that actions short of termination may constitute adverse actions within the meaning of the statute.  See, <u>e.g.</u>, <u>Charlton v. Paramus Bd. of Educ.</u>, 25 F.3d 194, 200 (3d Cir.) ("[P]ost-employment blacklisting is sometimes more damaging than on-the-job discrimination . . .."), <u>cert. denied</u>, 115 S. Ct. 590 (1994).  If Schweiss provided negative references to Smith's potential employers, as she contends, and she demonstrates that he did so because she had complained about his harassment, then a jury could reasonably conclude that the University was liable under Title VII for retaliation.

IV.

Smith presented sufficient evidence in the District Court to create a triable issue of whether St. Louis University subjected her to a hostile work environment.  She has also demonstrated that genuine issues of material fact exist that are appropriately to be decided by a jury as to whether the University retaliated against her for complaining.  Furthermore, Smith may make a claim for retaliation for events that occurred after she ceased to be employed by the University.  The judgment of the District Court is

reversed, and the cause remanded for further proceedings consistent with this opinion.

It is so ordered.

ALSOP, District Judge, dissenting in part and concurring in part.

Because I believe the District Court correctly granted summary judgment to the University on Smith's sexual harassment claim by finding that the University took adequate remedial measures after Dr. Smith reported Dr. Schweiss's alleged harassment, I respectfully dissent. I concur, however, with the majority's decision to reverse and remand on Smith's retaliation claim.

"Once an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment." Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). Appropriate remedial action may mean different things under different circumstances. "Just as in conventional tort law a potential injurer is required to take more care, other things being equal, to prevent catastrophic accidents than to prevent minor ones, so an employer is required to take more care, other things being equal, to protect its female employees from serious sexual harassment than to protect them from trivial harassment." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 432 (7th Cir. 1995).

The District Court concluded that the University's response to Dr. Smith's complaint was appropriate under the circumstances of this case. I agree. The facts regarding the University's response are straightforward, and are not, as suggested by the majority, disputed by the parties. The evidence shows Dr. Smith first reported Dr. Schweiss's behavior on or about December 1, 1993 to

the Dean of Student Affairs, Dr. Mootz.  Dr. Mootz met with Dr. Smith in January of 1994, and then referred Dr. Smith to Dean Monteleone, the Acting Dean of the Medical School.  Dean Monteleone met with Dr. Smith on February 3, 1994.  On March 22, Dean Monteleone met with Dr. Schweiss to discuss Dr. Smith's allegations.  Dean Monteleone also investigated the complaint by meeting with other members of the anesthesiology department.  On April 21, Dean Monteleone met with Dr. Smith again.  During this final meeting, Dr. Smith declined Dean Monteleone's offer to file a more formal complaint and appeared pleased by the actions taken by Dean Monteleone on her behalf. In response to Dr. Smith's complaint, Dean Monteleone took steps to revise the procedure for handling sexual harassment procedures, told Dr. Schweiss he was not to retaliate against Dr. Smith, and instituted training regarding inappropriate language in letters of reference written on behalf of residents.  Each of these steps were proper and were calculated to end the harassment alleged to have been experienced by Dr. Smith.  The record shows that St. Louis University did more than simply place "the harasser in charge of stopping the harassment" as suggested by the majority.

Summary judgment in employment discrimination cases, as in all cases, is appropriate when an examination of the evidence in a light most favorable to the non-moving part reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  As the Supreme Court explained in Anderson, "summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party."  477 U.S. at 251 (citations omitted).  To say that summary judgment should seldom be used in employment discrimination cases

does not further a district court's analysis of whether granting summary judgment is suitable in a particular case.  Given the volume of employment discrimination cases filed, the myriad causes of action alleged in each, and the fact that virtually each such case generates a motion for summary judgment, it is essential that courts employ Rule 56, when appropriate, to dismiss claims that are unsupported by law or fact.

Finally, the facts of this case do not parallel the egregious facts of the Kopp decision referred to by the majority.  Dr. Smith continued with her residency program without any further abuse, even though her interaction with Dr. Schweiss did not cease.  There was also no evidence in this case that the University knew of prior instances of alleged harassment by Dr. Schweiss.  Dean Monteleone treated Dr. Smith's complaint seriously and treated Dr. Smith respectfully.  The steps taken by the University were prompt and adequate responses to Dr. Smith's claim. Accordingly, I believe the University is entitled to summary judgment on Dr. Smith's sexual harassment claim, and I respectfully dissent.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-