United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2629

_____

Larry D. Montandon,                     *
                                        *
            Appellant,                  *
                                        *
Tish Walker Montandon,                  *
                                        *   Appeal from the United States
            Plaintiff,                  *   District Court for the
                                        *   Northern District of Iowa.
      v.                                *
                                        *
Farmland Industries, Inc., a KS         *
Corporation; Michael Ehlers;            *
Gene Todd,                              *
                                        *
            Defendants/Appellees.       *

_____

Submitted: February 13, 1997

Filed: June 26, 1997

_____

Before BOWMAN and WOLLMAN, Circuit Judges, and KOPF,[1] District Judge.

_____

[1]The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

WOLLMAN, Circuit Judge.

Larry Montandon appeals the district court's[2] grant of summary judgment in favor of Farmland Industries (Farmland) on Montandon's discrimination claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. We affirm.

## I.

Montandon was employed with Farmland from September 1967 until May 13, 1994. During the time relevant to this case, Montandon was the Assistant Hog Procurement Manager at Farmland's Denison, Iowa, processing plant. His duties involved the purchase of the 7,500 hogs butchered daily at the plant and supervision of the yard and the office. Michael Ehlers, Plant Procurement Manager, was Montandon's direct supervisor, and Gene Todd, Director of Hog Procurement, was Ehlers' supervisor.

Montandon's harassment claim is based on Ehlers' behavior. According to Montandon, Ehlers used vulgar, profane language, slammed things, stomped around, loudly reprimanded employees, and used intimidation. For example, in April of 1992, in the presence of three local hog buyers and the office staff, Ehlers slammed his fist on Montandon's desk and said to Montandon, "You don't buy no f---ing hogs from the Crete buying staff, you buy the f---ing hogs from my people."

Montandon reported this conduct to Todd on April 17, 1992. A year later, at a meeting on April 19, 1993, Montandon and four other employees informed Joyce Hurt, Farmland's Director of Human Resources, of Ehlers' behavior.

---

[2]The Honorable John A. Jarvey, Chief United States Magistrate Judge for the Northern District of Iowa, to whom this case was referred with the consent of the parties pursuant to 28 U.S.C. § 636(c)(3).

Montandon's retaliation claim revolves around the events that occurred after Montandon complained of Ehlers' behavior. Montandon had originally resided in Denison, but moved to Omaha, Nebraska, in January of 1991. Montandon states that he had informed Todd of his move and that Todd had not voiced any objection at that time. On May 24, 1993, however, Todd and Ehlers informed Montandon that he would have to move back to Denison by September 1, 1993. On June 7, 1993, Montandon received a score of 157 on his performance review, thirty points lower than his score in 1992.

On August 16, 1993, Montandon informed Ehlers that he would not move to Denison, in response to which Ehlers told him he need not report to work any longer. On September 20, 1993, Montandon sent a letter to Todd stating that he had not voluntarily resigned and wanted to return to work. When Montandon asked whether he would have to move to Denison to retain his job, Todd informed him he would live where he could best meet the needs of Farmland.

Montandon did not resume work and took sick leave until March 1, 1994. Montandon testified that he had suffered knots in his stomach every morning before going to work at Farmland. Montandon's consulting psychologist was of the opinion that Montandon was suffering from fatigue and loss of appetite. Montandon believed that these symptoms constituted a disability and requested that Farmland accommodate him by eliminating or limiting his contact with Ehlers. Farmland declined to do so and informed Montandon that he must report to work or request a leave of absence before May 12, 1994. Montandon failed to respond and was terminated on May 13, 1994.

Montandon filed suit alleging sexual harassment, retaliation, and disability discrimination. The district court held that Montandon failed to establish a prima facie case of sexual harassment; that Montandon's retaliation claim failed because he did not adduce evidence rebutting Farmland's legitimate reason for requiring Montandon to

move to Denison and for his receiving a lower score on his yearly evaluation; and that Montandon failed to establish that he was disabled.[3]

## II.

We will affirm a grant of summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine question of material fact exists and that the moving party is entitled to judgment as a matter of law. See Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994).

Montandon first argues that the district court erred in finding that he had failed to establish a prima facie case of sexual harassment. To prevail, Montandon was required to show that he was a member of a protected group, that he was subjected to unwelcome harassment based on sex, that the harassment affected a term, condition, or privilege of his employment, and that Farmland knew or should have known of the harassment and failed to take remedial action. See Smith v. St. Louis University, 109 F.3d 1261, 1264 (8th Cir. 1997); Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992).

A male may assert a claim of sexual harassment against another male. See Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1377 (8th Cir. 1996).[4] That harassment,

---

[3]Montandon also alleged Title VII claims against Todd and Ehlers in their personal capacities, as well as constructive discharge and intentional infliction of emotional distress claims. His wife, Tish Walker Montandon, claimed loss of consortium. The district court dismissed these claims. Because they have not been raised on appeal, they are deemed abandoned. See Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740-41 (8th Cir. 1985).

[4]It remains to be seen whether our holding in Quick will remain the law. See Oncale v. Sundowner Offshore Servs., Inc., 83 F.3d 118 (5th Cir. 1996) (holding that Title VII does not address same-sex harassment), cert. granted, 65 U.S.L.W. 3432

however, must be based on the complaining person's sex. See id. at 1378. Whether harassing conduct constitutes discrimination based on sex is determined by inquiring whether "'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Id. at 1379 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Montandon alleges that Ehlers' yelling, gesturing, and use of foul language constituted harassment based on sex. Montandon testified, however, that Ehlers' treatment of employees did not depend on their sex but on the degree to which Ehlers disliked a particular employee:

> Q: Well, how were women treated differently from men in the Denison hog office?
>
> A: It depends on who you were.
>
> Q: Well, how were women treated differently from men in the Denison procurement office?
>
> A: How were women treated differently? If [Ehlers] didn't like somebody, he would treat them like dirt. And if he liked the guy, they could do no wrong.
>
> Q: Mr. Montandon, are you saying that Mr. Ehlers treated all of the women bad, but he treated the guys okay?
>
> A: Not all the guys, no.
>
> Q: How were women treated differently from men, if at all, by Mr. Ehlers?

---

(U.S. June 9, 1997) (No. 96-568).

A:	If he liked a woman, they could do no wrong.  If he didn't like a woman, he would raise his voice and point fingers and whatever, and the same thing with men.  So they were equal as far as being treated -- I mean, there was no sexual preference.  It's just who he did like and who he didn't like is what it amounted to.

In light of this testimony, we agree with the district court that "[a]lthough Ehlers' conduct was offensive and unprofessional, [Montandon] has failed to show that it was based on sex."

Montandon asserts that he was present when Ehlers "hoot[ed], holler[ed], and whistl[ed]" at a female co-worker.  This allegation cannot support Montandon's claim of harassment, however, because it was not harassment based on Montandon's sex. See Quick, 90 F.3d at 1378.  Moreover, this one incident cannot be considered so "severe or pervasive" as to fall within the purview of Title VII.  Harris, 510 U.S. at 21.

Montandon also mentions that he saw Ehlers grab his testicles on two occasions. Montandon admitted in deposition, however, that he didn't know "if [Ehlers' grabbing] was nervousness or what," that Ehlers "could have been scratching" or "rearranging," as the grabbing lasted only a "three or four seconds," and that it was "not [offensive] to [him], but to the women [he was] sure it was."  This conduct, unoffensive to Montandon, cannot support his sexual harassment claim.  See Quick, 90 F.3d at 1378.

## III.

Montandon next argues that the district court erred in granting summary judgment in favor of Farmland on his retaliation claim.  To establish a prima facie case of retaliation, a plaintiff must show that he engaged in statutorily protected activity, that the defendant took adverse action against him, and a connection between the two.  See Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995), cert. denied,

116 S. Ct. 1319 (1996); <u>Marzec v. Marsh</u>, 990 F.2d 393, 396 (8th Cir. 1993). The defendant may then rebut the plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action. <u>See</u> <u>Ruby v. Springfield R-12 Pub. Sch. Dist.</u>, 76 F.3d 909, 911 (8th Cir. 1996). If the defendant makes this showing, the plaintiff must show that the defendant's proffered reason was a pretext for illegal retaliation. <u>See</u> <u>id.</u>

To establish that he engaged in statutorily protected activity, Montandon need not prevail on his underlying Title VII claim. <u>See</u> <u>Sisco v. J. S. Alberici Constr. Co., Inc.</u>, 655 F.2d 146, 150 (8th Cir. 1981). He must, however, have a reasonable belief that his activity was protected by Title VII, <u>Evans</u>, 65 F.3d at 100, and "cannot avoid scrutiny of his claims" merely by claiming such a belief. <u>Id.</u> at 101.

The record does not support a claim that Montandon believed that his complaint regarding Ehlers' conduct was protected by Title VII or that such a belief would be reasonable. Montandon does not contend that he suggested in his complaint to Todd in 1992 that his sex was the basis for Ehlers' behavior. In the meeting with Hurt, discrimination based on Montandon's sex was never posited as a basis for Ehlers' conduct. As indicated above, Montandon's own testimony reveals that he was aware that all employees, not only those of a particular sex, were subject to Ehlers' inappropriate behavior.

Montandon has also failed to show that he suffered an adverse employment action. The adverse actions Montandon alleges are the requirement that he move to Denison and his 1993 employment evaluation. Although "actions short of termination may constitute adverse actions within the meaning of the statute," <u>Smith</u>, 109 F.3d at 1266, "not everything that makes an employee unhappy is an actionable adverse action." <u>Smart v. Ball State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996); <u>see</u> <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 707-08 (5th Cir. 1997). Rather, the action must have had some adverse impact on Montandon to constitute an adverse employment

action.  See Mattern, 104 F.3d at 708; Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).

The requirement that Montandon move did not entail a change in position, title, salary, or any other aspect of his employment.  However unpalatable the prospect may have been to him, the requirement that Montandon move to Denison did not rise to the level of an adverse employment action.  See Williams, 85 F.3d at 274 (transfer that does not involve demotion in form or substance, or change in pay or working conditions, does not constitute adverse employment action).

Similarly, Montandon has not shown that his 1993 evaluation was negative. Although it was thirty points lower than his 1992 evaluation, it still merited a "meets expectations" score.  The 1993 score was based on new and expanded evaluation categories, and Montandon has not explained the relationship between the new and previous evaluation systems.  Moreover, because this evaluation was never used as the basis for any action against Montandon, it cannot fairly be considered an adverse employment action.  See Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir. 1994) ("meets expectations" score on a new scale, lower than previous evaluations, fails to establish adverse employment action absent evidence showing that such score is in fact negative); Smart, 89 F.3d at 442 ("There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action.").

Even assuming that Montandon established a prima facie case, we agree with the district court that Farmland established legitimate, nonretaliatory reasons both for Montandon's lower 1993 evaluation and the requirement that Montandon move. Montandon's 1993 score is consistent with his evaluation history, which shows a decline from 210 in 1991 to 187 in 1992.  In addition, although Montandon improved his scores in hog purchasing and plant maintenance, his scores in some of the categories added to the evaluation in 1993 were low and resulted in a lower total score.

Furthermore, Montandon scored low in maintaining producer and area pork industry relations, an area in which Montandon's need for improvement was noted by Todd in 1989 and by Ehlers in Montandon's 1992 evaluation. Ehlers stated in 1992 that "Increased participation within this area of performance will be required. This must be done to keep Farmland in [a] competitive/acceptable position."

Montandon argues that a jury could question the low evaluation score given by Ehlers in light of the testimony of two of Montandon's co-workers that Montandon was a devoted, capable, and reliable employee. The categories in which Montandon's scores were low, however, were specific: supervision and training of personnel and producer and area pork industry relations. Montandon has adduced no evidence showing that his scores in these specific categories were unwarranted. The testimony of Montandon's co-workers, who are not alleged to have any managerial or supervisory training or experience, would have little bearing on Montandon's evaluations in these specific categories.

Farmland also adduced legitimate reasons for requiring Montandon to move. The perception that Montandon was not spending enough time in the Denison area was first documented in 1989, and Ehlers indicated in Montandon's 1992 review that Montandon would be required to spend more time with local farmers and cooperatives. Montandon admitted in his deposition that Ehlers informed him during that review that he would prefer that Montandon move to Denison. In addition, other Farmland employees, including Todd, had been required to move to the areas where they work.

Montandon argues that although he was informed as early as 1989 that he should spend more time with local producers, it was not until May 24, 1993, that he was told that he would be required to move to Denison. Montandon contends that Todd could specify only two instances in which Montandon was unavailable -- once when a swine specialist tried to reach Montandon, and once when the Denison facility flooded and Montandon did not come in to clean up on Saturday when all other employees did,

although he did come in on Sunday. Montandon explains that he was on vacation during both incidents and that the flood incident happened after he was instructed to move. He also asserts that he attended local fairs, dinners, and other functions, rode with country buyers, and would talk to producers at events such as the spring hog show, and adds that he could just as easily make contact with Omaha producers as with producers in the Denison area.

Farmland's decision to require Montandon to move to Denison is supported by the evaluations of Montandon completed well before his complaints regarding Ehlers and by the fact that Farmland had in the past required other managers to move. Accordingly, Montandon's evidence is insufficient to raise a genuine issue of fact on the question of pretext. Although Montandon believes that the requirement that he move was unfair and unnecessary, Title VII does not prohibit a management decision of this nature in the absence of a showing that it was motivated by retaliation for engaging in Title VII-protected activity. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). We agree with the district court that "[e]ven adopting plaintiff's facts as true, the defendants have shown that requiring Montandon to move to Denison was work related and not in retaliation for Montandon's complaints." See Berg v. Bruce, 112 F.3d 322, 328 (8th Cir. 1997).

## IV.

Montandon next argues that the district court erred in determining that no genuine issue of material fact existed regarding Montandon's claim of disability under the ADA. To invoke the protection of the ADA, Montandon must establish that he suffers, has a record of suffering, or is perceived as suffering from "a physical or mental impairment that substantially limits one or more of [his] major life activities."

42 U.S.C. § 12102(2). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). However unpleasant (and understandably so) it may have been for him to work under Ehlers' supervision, Montandon has adduced no evidence showing that his performance of any major life activity was substantially limited or that he was perceived as being so limited. His disability discrimination claim therefore fails.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-