**Deb GARDNER, Plaintiff,**

v.

**TRIPP COUNTY, SOUTH DAKOTA, and Tripp County Highway Department, Defendants.**

**Civ.No. 97–3042.**

United States District Court,
D. South Dakota,
Central Division.

Oct. 28, 1998.

---

Charles Thomas Abouresk, Abouresk Law Offices, Rapid City, SD, Stephanie Carlson Bengford, Rapid City, SD, for plaintiff.

William C. Garry, Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Theresa Moore Maule, Winner, SD, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KORNMANN, District Judge.

### BACKGROUND

[¶ 1] Deb Gardner has been employed as a secretary and bookkeeper by the Tripp County Highway Department ("TCHD") in Winner, South Dakota, since 1988. She is supervised by Joel Swedlund ("Swedlund"), the Highway Superintendent for Tripp County, and is ultimately supervised and employed by Tripp County through its Board of County Commissioners.

[¶ 2] On June 29, 1995, plaintiff was visiting with two female co-workers in the county highway shop when Darrell Olson ("Olson"), an employee and foreman of TCHD, slapped plaintiff hard on the buttocks. Plaintiff immediately reported Olson's unwelcome sexual conduct to Swedlund. According to plaintiff, Swedlund failed to respond to her complaint over the next day and a half, despite her repeated requests. Soon thereafter, plaintiff reported the incident and Swedlund's failure to act on her complaint to the Tripp County Commissioners and to Kathleen Flakus, the Tripp County Auditor. On July 7, 1995, Swedlund met with TCHD employees and distributed the County's sexual harassment policy. Plaintiff claims that at this meeting, which lasted approximately thirty seconds, Swedlund stated that he did not agree with the policy, nor did he ever put a reprimand in Olson's file. Ol-

son subsequently apologized to plaintiff at a Commission meeting and resigned from his position with TCHD on September 17, 1995, for reasons unrelated to plaintiff's complaint. Plaintiff believes Olson's apology was insufficient punishment for his behavior towards her.

[¶ 3] According to plaintiff, she and Swedlund enjoyed a positive working relationship prior to the incident involving Olson and her notification to the Commissioners of his failure to take appropriate action. She claims Swedlund adversely changed his behavior toward her since that time, including (1) ignoring or being rude to her; (2) referring to her as a "red-headed bitch"; (3) refusing to speak to her even when necessary for plaintiff to do her job; (4) directing questions to her through a third person; and (5) refusing to help her with daily business activities at the shop. Plaintiff claims this behavior has had a direct effect on her ability to do her job at the level to which she had been performing prior to her sexual harassment complaint.

[¶ 4] Between June 30, 1995, and July 25, 1995, plaintiff communicated with the Commissioners three times about Swedlund's claimed retaliatory behavior towards her. On July 25, plaintiff attended a Commission meeting to discuss her complaints about Swedlund's behavior. She claims that the Commissioners advised her to take vacation time immediately and admitted they had not spoken to Swedlund about his behavior. Plaintiff believes certain Commissioners knew of, and some even supported, Swedlund's treatment of her after she filed the sexual harassment complaint. As a result of defendants' conduct, plaintiff claims that she suffered emotional and physical health problems, including a nervous breakdown on September 8, 1995, for which she was hospitalized. She further claims she has been diagnosed with a medical condition aggravated by stress and has received treatment and medication for this condition and for her depression.

[¶ 5] Until 1996, plaintiff received additional overtime hours during the summer months. The Commission affirmed Swedlund's decision not to extend summer hours to plaintiff in 1996, because, according to defendants, additional hours for a secretary-bookkeeper were not justified by the workload. Plaintiff claims that she did not receive the additional hours because of her sexual harassment complaint and that in previous years, she received 50 hours per week, the same as other TCHD employees, because their additional work made more work for her. Moreover, she claims that when she approached Swedlund to ask him why her overtime hours were not extended, he answered that one of the Commissioners was "giving him some shit" about giving her the extra hours. Plaintiff also claims that she did not receive interviews for other jobs for which she applied because she had been labeled a "troublemaker" for her sexual harassment complaints. Finally, plaintiff claims that she remains in fear of losing her job based on defendants' conduct.

[¶ 6] Plaintiff instituted this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (1982), and included pendent state law claims. In Count I of the complaint, plaintiff alleged that the acts and omissions of defendants constitute sexual harassment and sex discrimination in violation of Title VII. 42 U.S.C. § 2000e–2(a). Count II alleges that the acts and omissions of defendants constitute sex discrimination and retaliation in violation of Title VII. 42 U.S.C. § 2000e–3. Plaintiff asserts in Counts III and IV that these same acts and omissions constitute sex discrimination and reprisal in violation of the South Dakota Human Rights Act, i.e., SDCL §§ 20–13–10 and 20–13–26 (Michie 1995). Plaintiff also alleges in Count V intentional infliction of emotional distress, negligent infliction of emotional distress in Count VI, and slander in Count VII, all based on defendants' alleged acts and omissions.

[¶ 7] Defendants filed a motion for summary judgment, Doc. 30. Defendants claim they are entitled to summary judgment as to Counts I and III because plaintiff has failed to show that she has been a victim of sexual harassment or subjected to a hostile work environment. Defendants also claim they are entitled to summary judgment as to Counts II and IV because plaintiff has failed to establish that they took adverse action against her, and even if such adverse action is demonstrated, plaintiff has failed to show a causal relationship between her complaint of sexual harassment and the adverse action. Finally, defendants point out that if summary judgment is granted, this Court would lack jurisdiction over the pendent state law claims. 28 U.S.C. § 1367. These matters came on for hearing on September 30, 1998, with Charles Abourezk appearing for plaintiff and with William Garry and Theresa Maule appearing for defendants.

**DECISION**

[¶ 8] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. *Donaho,* 74 F.3d at 897–98. The Court further points out that in employment discrimination cases under Title VII, summary judgment should seldom be granted. *Smith v. St. Louis University,* 109 F.3d 1261, 1264 (8th Cir.1997); *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994).

**I. Sexual Harassment Claim**

[¶ 9] Plaintiff claims generally that the acts and omissions of defendants constitute sexual harassment under Title VII and SDCL § 20–13–10. Defendants argue that the isolated incident in which Olson slapped plaintiff on the buttocks is insufficient to establish a hostile work environment. According to defendants, the alleged harassment involving Olson was not sufficiently pervasive to constitute a hostile work environment as required by Title VII. *Moylan v. Maries County,* 792 F.2d 746, 749 (8th Cir.1986) (requiring plaintiff to show a "practice or pattern" of sexual harassment).

[¶ 10] In order to prove that she was subjected to a hostile work environment in violation of Title VII, plaintiff must show that "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendants knew or should have known of the harassment and failed to take proper remedial action." *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998) (citing *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)); *see also Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662

(1998). Both sides admit that, at least for the purpose of the motion under consideration, the first three elements of the hostile work environment claim are satisfied.

[¶ 11] As to the fourth element, harassment affects a term, condition, or privilege of employment if it is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)); *Smith v. St. Louis University*, 109 F.3d 1261 (8th Cir.1997). "The conduct must be sufficient to create a hostile work environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Howard*, 149 F.3d at 840 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370). The relevant factors for determining whether conduct rises to the level of abusiveness required for a successful hostile work environment sexual harassment claim under Title VII include (a) the frequency of the discriminatory conduct; (b) its severity; (c) whether it is physically threatening or humiliating, or a mere offensive utterance; and (d) whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

[¶ 12] There are numerous cases in the Eighth Circuit, as well as a recent Supreme Court decision, that support defendants' argument that the slapping incident, standing alone, is insufficient to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (holding that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' "); *see also Lam v. Curators of the Univ. of Mo.*, 122 F.3d 654 (8th Cir.1997), and *Montandon v. Farmland Indus.*, 116 F.3d 355 (8th Cir.1997). For example, in *Montandon*, the court held that a single incident involving a supervisor hooting, hollering, and whistling at a female employee was not sufficiently severe or pervasive to establish a hostile work environment. 116 F.3d at 358. Similarly, in *Lam*, a single exposure to an offensive and distasteful videotape containing sexual innuendos was not sufficiently severe or pervasive to establish a hostile environment under Title IX. 122 F.3d at 656–57. In *Spencer v. Ripley County State Bank*, evidence that a bank president repeatedly grabbed at and pinched the plaintiff and pulled at her bra was insufficient to establish a prima facie case of hostile work environment. 123 F.3d 690, 691 (8th Cir.1997). The court held that the plaintiff failed to prove that the defendant's conduct "was so offensive or abusive as to affect her well-being or her work performance." *Id.* Only when the alleged discriminatory behavior rises to the level of attempted rape has an isolated incident been found to constitute a hostile work environment. *Todd v. Ortho Biotech, Inc.*, 138 F.3d 733 (8th Cir.1998).

[¶ 13] Other cases are instructive in determining what type of behavior crosses the threshold necessary to create a hostile work environment. For example, in *Smith*, evidence that the chairman of an anesthesiology department frequently ridiculed female residents and made numerous harassing or discriminatory comments was sufficient to survive a summary judgment motion on a sexual harassment claim. 109 F.3d at 1264–65. In another case, a supervisor repeatedly gave sexual connotation to certain words, mentioned his dreams about the plaintiff and other female employees, ordered photographs of the plaintiff without her consent, and engaged in other discriminatory behavior. *Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1106–07 (8th Cir.1998). The court found "a clear pattern of offensive conversation and behavior, *not merely an isolated incident or two*." *Id.* at 1109 (emphasis added).

[¶ 14] Following oral argument on this motion, plaintiff submitted addi-

tional case law and evidence to support her hostile work environment claim. She alleges that a male employee kissed another female employee without her consent approximately one week prior to the slapping incident involving plaintiff and that Swedlund posted pictures of scantily dressed women on his office wall. Although harassment of other employees may be "relevant to show pervasiveness of the hostile environment," the offensive conduct must be more than a few isolated incidents. *Howard*, 149 F.3d at 838 (involving co-worker who would frequently brush against female employees and make chronic sexual innuendos); *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 981 (4th Cir. 1997) (involving supervisor who, on a daily basis, groped female employees and made suggestive and offensive remarks); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir.1993) (holding that unwanted rubbing of plaintiff's thigh, a forced kiss, and attempted grab by the alleged harasser were insufficient to establish a hostile work environment). Therefore, the unwanton kiss of another female employee of TCHD by a different male employee offers little, if any, support for plaintiff's claim. The pictures of women in Swedlund's office also do not enhance plaintiff's hostile work environment claim. "The posting of sexually-oriented materials *in common areas* may serve as evidence of a hostile environment." *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 880 (D.Minn.1993) (citing *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir.1988), *cert. denied* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989)). In *Jenson*, visual references to sex and to women as sexual objects were found throughout the plant, including on the walls and on the mining equipment. *Id.* at 879–80; *see also Harris*, 132 F.3d at 981 (involving sexually-explicit materials posted on the walls, tables, and bathrooms of the workplace); *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir.1990) (involving visual references to sex in plaintiffs' personal work spaces). No case law in the Eighth Circuit, or any other Circuit, suggests that such materials posted solely in a supervisor or male employee's office or personal work space supports a finding of a hostile work environment.

[¶ 15] Thus, with respect to the isolated incident on June 29, 1995, when plaintiff was slapped on the buttocks by Olson, in addition to the other evidence plaintiff cites, the Court agrees with defendants that such conduct is insufficient as a matter of law to create a hostile work environment under Title VII sexual harassment law. Moreover, both parties admit that no instances of similar behavior were subsequently reported. As such, analysis of the fifth element, whether defendants failed to take prompt remedial action to prevent or correct the harassing conduct, is unnecessary. Therefore, summary judgment in favor of defendants on the Title VII sexual harassment claim should be granted. Summary judgment should also be granted in favor of defendants on Count III because South Dakota law adopts these same five elements for sexual harassment under SDCL § 23-13-10. *Erdahl v. Groff*, 576 N.W.2d 15, 17 (S.D.1998) (citing *Huck v. McCain Foods*, 479 N.W.2d 167 (1991)).

[¶ 16] Plaintiff also claims, however, that the conduct of defendants after she complained of Olson's behavior constitutes sex discrimination and sexual harassment under the hostile work environment theory. Defendants contend that these alleged acts and omissions are relevant only to the separate and distinct claim of retaliation and cannot formulate the basis of a sexual harassment claim. The Court agrees with defendants on this point as well. "[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir.(Minn.)); *see also Smith v. St. Louis University*, 109 F.3d 1261 (8th Cir.1997) (addressing hostile work environment and retaliation claims separately); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (holding that plaintiff's "claims of

race discrimination are separate and distinct from her claims of retaliation"). A Title VII retaliation claim presents both a new legal theory and new factual allegations.

[¶ 17] At oral argument on this motion, plaintiff was invited to cite any authority to support her argument that retaliation activities (construing the facts in a light most favorable to plaintiff) may also be treated as a hostile work environment under Title VII. Plaintiff cited *Quick v. Donaldson Co.*, 90 F.3d 1372 (8th Cir.1996), but the Court finds this case to not support plaintiff's contention. In *Quick,* the plaintiff was sexually harassed hundreds of times. A claim of retaliation was not presented. The Court determines that a claim of hostile work environment is a separate and distinct claim from a claim based on retaliation after the alleged hostile work environment was "created" and a complaint was made. Moreover, if the same set of facts could support both claims, state and federal provisions that provide a separate cause of action for retaliatory acts would be rendered superfluous. Therefore, the conduct alleged by plaintiff regarding actions taken against her by Swedlund and the Tripp County Commission will be considered only under the retaliation claim in Counts II and IV.

## II. Retaliation Claim

[¶ 18] Plaintiff claims that Swedlund's conduct and the acts and omissions of the Commissioners after she filed her sexual harassment complaint constitute retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a), and SDCL § 23–10–26. To establish a case of retaliation under Title VII, plaintiff must show "(1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that adverse action occurred because of her protected activity." *Howard,* 149 F.3d at 841 (citing *Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1245 (8th Cir.1998); *Cross v. Cleaver,* 142 F.3d 1059, 1071–72 (8th Cir.1998)). If plaintiff establishes this prima facie case, defendants may rebut "by advancing a legitimate, nonretaliatory reason for the adverse employment action." *Ruby v. Springfield R–12 Pub. Sch. Dist.,* 76 F.3d 909, 911 (8th Cir.1996). If defendants so rebut, plaintiff must show that the proffered reason is a pretext for illegal retaliation. *Id.*

[¶ 19] As to plaintiff's prima facie case, there is no question that plaintiff engaged in a protected activity, i.e., she complained of sexual harassment and discrimination. For the second element, "[a]lthough 'actions short of termination may constitute adverse actions within the meaning of the statute,' not everything that makes an employee unhappy is an actionable adverse employment action." *Coffman,* 141 F.3d at 1245 (quoting *Smith,* 109 F.3d at 1266). Rather, the alleged action(s) must have some materially adverse effect on plaintiff's employment terms or conditions. *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir.1997). In *Coffman,* the court held, based on plaintiff's testimony and that of co-workers, that sufficient evidence existed for a jury to conclude that the plaintiff suffered an adverse employment action. There, the plaintiff claimed she was denied federal holiday leave after complaining of sexual harassment. She also claimed that her supervisor "would back away from her in the hallway in an exaggerated manner," causing her embarrassment, and that her job duties changed, including the loss of certain responsibilities as supervisor of the shipping department. *Id.* at 1245. The plaintiff also testified that she was excluded from some management meetings, and that her supervisor "began to communicate with her more by electronic mail and worked with her less on a one-to-one basis . . . hamper[ing] her ability to do her job." *Id.* The court explained that the combined effect of these actions materially and adversely affected the plaintiff's employment. *Id.* at 1245–46 (citing *Burns v. McGregor Elec. Industries,* 955 F.2d 559, 564 (8th Cir.1992)).

[¶ 20] Plaintiff's theory of adverse employment action closely resembles that in *Coffman.* She claims that Swedlund's conduct toward her changed immediately and drastically after she filed the sexual harassment complaint. She contends that Swedlund either ignored her or was rude to her, and referred to her as a "redheaded bitch" on at least two occasions. She claims that he refused to speak to her, even on matters that directly related to her ability to adequately perform her job, and that he would direct questions to her through a third person. She also claims that Swedlund refused to help her with daily business activities at the shop. Finally, plaintiff contends she was not extended additional overtime hours during the summer months of 1996 because of her sexual harassment complaint.

[¶ 21] Defendants argue that no adverse employment action was taken against plaintiff as evidenced by the facts that her job was never threatened; she was not demoted; her job responsibilities did not change; and other conditions of her employment were not altered. *See Davis v. City of Sioux City,* 115 F.3d 1365 (8th Cir.1997). However, an employee need not be "demoted, terminated, reassigned, or suspended, ... [nor] lose any compensation or privileges" to establish adverse employment action sufficient to support a retaliation claim under § 1981 and Title VII. *Kim v. Nash Finch Co.,* 123 F.3d 1046 (8th Cir.1997). "[A]ctions short of termination may constitute adverse actions within the meaning of the statute." *Smith,* 109 F.3d at 1266 (holding that a jury could conclude that negative job references to potential employers constitute adverse employment actions).

[¶ 22] The final element in the prima facie case of retaliation is that the adverse action was causally linked to plaintiff's protected activity. The facts of *Coffman* are instructive on this point as well. The court held that the timing of the supervisor's action in relation to plaintiff's sexual harassment complaint, the fact that the supervisor was the subject of the harassment complaint, and evidence that his demeanor and relationship with the plaintiff changed after the complaint was filed, supported a reasonable inference that his actions were motivated by the complaint. 141 F.3d at 1246; *see also Kim,* 123 F.3d 1046; *Smith,* 109 F.3d at 1266 (explaining that an inference of retaliation arises when a retaliatory act occurs shortly after a complaint is filed). Similarly, in the instant case, although Swedlund was not the target of plaintiff's harassment complaint, his behavior toward her changed suddenly and drastically after she made the complaint and reported it to the Commission. In addition, although defendants offer a legitimate reason for why plaintiff's overtime hours were not extended in the summer of 1996, a jury could find this reason to be pretextual. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Coffman,* 141 F.3d at 1245. Finally, although defendants deny the other alleged retaliatory actions by Swedlund, and therefore offer no explanations for the actions, a jury could find the allegations to be credible.

[¶ 23] The Court must next address whether the County could be vicariously liable under Title VII for the alleged retaliatory actions of Swedlund. In *Coffman,* the court "assume[d] without deciding that prompt and appropriate remedial action prevents employer liability for a Title VII retaliation claim." *Id.; see also Faragher,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (holding that although an employer is subject to vicarious liability under Title VII to a victimized employee *for an actionable hostile environment* created by a supervisor, employer may raise an affirmative defense based on the reasonableness of the employer's conduct in seeking to prevent and correct harassing conduct and the reasonableness of the employee's conduct in seeking to avoid harm). The reasoning in *Coffman* assumes that the employer "knew or should have known" of the supervisor's retaliatory conduct. However, in *Cross v. Cleaver,* the Eighth Circuit

noted the split in the Circuits on this issue and held that:

> [W]here a supervisory employee with the power to hire, fire, demote, transfer, suspend, or investigate an employee is shown to have used that authority to retaliate for the filing of a charge of sexual harassment, the plaintiff need not also prove that the employer participated in or knew or should have known of the retaliatory conduct to hold the employer liable. Indeed, in the circumstances where the employer is a board, and that board delegates authority to an individual to run day-to-day operations of a department, application of the "knew or should have known" standard to the members of the board would have the effect of insulating the employer from Title VII liability.

142 F.3d 1059, 1074 (8th Cir.1998); *see also Davis*, 115 F.3d at 1369 (considering whether employer took adverse action against plaintiff instead of applying the "knew or should have known" standard to the retaliation claim); *Smith*, 109 F.3d at 1265–66 (applying "knew or should have known" standard to hostile environment claim, but not to claim of retaliation by supervisor).

[¶ 24] *Cross* involved the chief of police whose retaliatory conduct involved investigations, transfers, and suspensions. 142 F.3d at 1073–74. The court noted that other cases may involve either supervisory employees who are not as high in the employer's hierarchy or retaliatory conduct in which the supervisor does not "wield the actual or apparent authority of the employer" so as to impute retaliatory conduct to the employer. *Id.* at 1074. "Thus, the standard of employer liability applicable to a retaliation claim may well depend upon both the status of the retaliator and the nature of the retaliatory conduct." *Id.* The instant case involves the Highway Superintendent for Tripp County who allegedly engaged in retaliatory conduct that included a refusal to extend additional overtime hours to plaintiff, a reluctance to engage in direct communications with plaintiff, and other alleged unpleasant

behavior that inhibited plaintiff's ability to adequately perform her job. Even if the Court found the status of the supervisor and the nature of the alleged retaliatory conduct to be significantly different than the circumstances in *Cross*, thus applying the "knew or should have known" test, there is sufficient evidence in the record that the County was aware of Swedlund's conduct toward plaintiff after she made her harassment complaint. Thus, the next question becomes whether or not the County took prompt and appropriate remedial action to correct or prevent such retaliatory conduct under the analysis in *Coffman*. Again, the Court finds that there is sufficient evidence in the record to suggest that the County may not have taken any sufficient remedial action against Swedlund; moreover, some evidence may even suggest that certain Commissioners encouraged Swedlund's behavior. These are questions for the jury.

[¶ 25] In sum, genuine issues of material facts exist as to whether defendants took adverse employment actions against plaintiff. *See Smith*, 109 F.3d at 1266. A factual issue also exists as to whether or not there is a causal connection between her sexual harassment and discrimination complaint and the alleged retaliatory actions. Because the case for retaliation will likely rely on inferences, rather than direct evidence, of defendants' motivation, summary judgment is particularly inappropriate. *Id.* Moreover, because the issue of whether or not defendant Tripp County took prompt and appropriate remedial action in response to Swedlund's alleged retaliatory conduct involves a fact-based inquiry, the matter should be resolved by the jury. *See Coffman*, 141 F.3d at 1246 (citing *Smith*, 109 F.3d at 1265). Therefore, defendants' motion for summary judgment as to Counts II and IV should be denied.

### III. Sex Discrimination Claim

[¶ 26] This claim is not explicitly addressed in defendants' motion for summary judgment, and the Court assumes

that plaintiff advances this independent claim under the theory of disparate treatment. There are three stages for analyzing sex discrimination cases under Title VII based on disparate treatment theory: (1) prima facie case; (2) nondiscriminatory reason(s); and (3) pretext. *Adams v. Nolan*, 962 F.2d 791, 794 (citing McDonnell Douglas–Burdine framework). To establish the prima facie case, plaintiff must prove by a preponderance of the evidence that (a) she was in a protected category; (b) she was qualified for the additional overtime hours; (c) she was denied the overtime hours; and (d) other persons similarly situated with her qualifications received the overtime hours. *See id.* There is no question that the first three elements of the prima facie requirements are satisfied. As to the fourth element, the other employees of TCHD who received the overtime hours were construction employees, not secretaries or bookkeepers. In addition, plaintiff received the additional hours in previous years, which makes it difficult for plaintiff to argue that she was denied the hours because of her gender. However, the Court will assume, for the sake of analysis, that plaintiff also satisfies the fourth element of the prima facie case. Defendants do offer a nondiscriminatory reason for why plaintiff did not receive the additional hours—the workload did not justify the hours for a secretary and bookkeeper. The pretext stage poses the real problem for plaintiff: if she argues that the real reason defendants denied her the additional overtime hours during the summer of 1996 was because of her sexual harassment and discrimination complaint, this brings her right back to her claim for retaliation. Therefore, it becomes evident that plaintiff does not have a claim for sex discrimination under Title VII, and defendants are entitled to summary judgment as to this count.

## IV. Pendent State Law Claims

[¶ 27] Neither party sets forth arguments as to the merits of pendent state law claims. Because summary judgment is to be denied as to Counts II and IV, the Court retains supplemental jurisdiction over these claims.

## ORDER

[¶ 28] Based upon the foregoing,

[¶ 29] IT IS ORDERED that defendants' motion for summary judgment, Doc. 30, is granted as to Counts I and III, and denied as to all remaining Counts.

[¶ 30] Dated this 21st day of October, 1998.