36 F.Supp.2d 897 (1999)
Victor L. ODOM, Plaintiff,
v.
ST. LOUIS COMMUNITY COLLEGE, The Junior College District of St. Louis County, Missouri, d/b/a St. Louis Community College at Florissant Valley, Defendant.
No. 4:97CV2290-SNL.
United States District Court, E.D. Missouri, Eastern Division.
February 18, 1999.
*898 *899 Dale M. Weppner, St. Louis, MO, for plaintiff.
Kathi L. Chestnut, Kathi L. Chestnut, P.C., St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on Motion of Defendant St. Louis Community College, the Junior College District of St. Louis County, Missouri for Summary Judgment (# 18) filed February 1, 1999. The underlying lawsuit is in two counts. Count I alleges violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. That count includes allegations of "hostile work environment" sexual harassment and retaliation. Count II alleges violation of the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq. That count includes allegations under the same theories as in Count I.

Summary Judgment Standard
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Because discrimination cases often turn on inferences rather than on direct evidence, the Courts are particularly deferential to the non-movant. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). Therefore, summary judgment should seldom be used in an employment-discrimination case. Id. at 1341. Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Assoc. Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 *900 F.2d 207, 210 (8th Cir.1976). In light of that standard, the Court will assume the truth of the following facts, acknowledging that, if true, they chronicle a largely shameful and embarrassing series of events.[1]

Factual Background
Plaintiff went to work for the defendant, Junior College District of St. Louis, St. Louis County, Missouri's Florissant Valley campus (Florissant Valley) in 1980. Plaintiff's Deposition p. 7 lns. 7-11. Initially, plaintiff worked as a shipping clerk. In 1986, in addition to his employment as a shipping clerk at Florissant Valley, plaintiff began working part-time as a reserve police officer in the city of Moline Acres. Plaintiff's Deposition p. 8 ln. 14. In 1988, he ceased working as a shipping clerk, and began working as a full-time police officer at Florissant Valley. Plaintiff's Deposition p. 7 ln. 7. He continued working for Moline Acres as well until 1995. Plaintiff's Deposition p. 8 ln. 14. That was the same year his difficulties began at Florissant Valley.
On August 18, 1995, Florissant Valley hired Rochelle Young as a college police officer. Defendant's Exhibit D. Since a couple of weeks before her employment, and continuing until August 5, 1996, the Florissant Valley police department had no chief. Defendant's Exhibit K, Prunty Affidavit ¶ 4. As a result, Lieutenant Roger Paglusch assumed many of the chief's duties. Plaintiff's Exhibit K, Prunty Affidavit ¶ 5. Plaintiff in turn assumed many of the lieutenant's duties. Id.; Plaintiff's Exhibit 8. Both lieutenant Paglusch and plaintiff received ten percent pay increases to reflect their added responsibilities. Defendant's Exhibit K, Prunty Affidavit ¶ 6.
One of plaintiff's responsibilities was to train Officer Young in the use of her handgun. It was during this transitional pistol training session that Officer Young made the first of several inappropriate comments to plaintiff. According to plaintiff, Officer Young had a new holster. Plaintiff's Deposition p. 43 ln. 4. While plaintiff was showing her the proper drawing procedure, Officer Young commented that the snap on the holster was hard to unsnap. Plaintiff's Deposition p. 43 lns. 10-12. Plaintiff instructed Officer Young that Vaseline would keep the snap from locking. Plaintiff's Deposition p. 43 lns. 16-18. Officer Young then pointed to plaintiff's crotch and stated that plaintiff could put Vaseline on his crotch as well. Plaintiff's Deposition p. 43 lns. 19-20. According to plaintiff, he expressed disapproval of Officer Young's comment at that time. Plaintiff's Deposition p. 44 lns. 3-6. Officer Young responded that she was only kidding. Plaintiff's Deposition p. 44 ln. 7. Plaintiff testified that he verbally reported this incident to Lieutenant Paglusch, but he does not know the exact date when he made such a report. Plaintiff's Deposition p. 48 ln. 22.[2]
The next event involved the observation by another female co-worker that plaintiff had large fingers, "as big as hot dogs." Crumpton Deposition p. 33 lns. 5-6. Officer Young in response stated that she was glad plaintiff was not her obstetrician-gynecologist. Crumpton Deposition p. 33 lns. 6-7. Plaintiff responded by shaking his head in disgust and walking away from Officer Young. Plaintiff's Deposition p. 80 lns. 12-13.
On another occasion, Officer Young complained to plaintiff about some dating problems she was having and asked him for advice. Plaintiff's Deposition p. 169 lns. 11-18. Plaintiff told her that he had no advice for her, and tried to get away from her. Plaintiff's Deposition p. 169 lns. 18-19. Officer Young then pushed plaintiff in the chest and told him to listen to her.
Plaintiff's Deposition p. 169 lns. 20-21. She got angry and told plaintiff that he reminded her of her father and the father of her baby in that he never listened to her when she had something to say. Plaintiff's Deposition p. 169 ln 23 to p. 170 ln. 1.
*901 On another occasion, Officer Young offered plaintiff a doughnut from a plate of sweets that had been left over after a campus meeting. Plaintiff's Deposition p. 165 ln. 21 to p. 166 ln. 5. Plaintiff declined the doughnut, stating that he not know where the pastries had been. Plaintiff's Deposition p. 166 lns. 5-6. Officer Young then apparently took one of the pastries, placed it between her legs and said that was where it had been. Plaintiff's Deposition p. 166 lns. 15-17.
Another time, Officer Young rubbed against plaintiff with her shoulder and arm as they walked across campus. Plaintiff's Deposition p. 173 lns. 12-13. Plaintiff felt Officer Young was coming on to him, and he told her to stop. Plaintiff's Deposition p. 173 lns. 18-19. Officer Young then apparently began kicking plaintiff's feet, trying to trip him while he was walking. Plaintiff's Deposition p. 173 lns. 20-21. Plaintiff asked her what she was doing, and she responded, "Oh, I forgot. You're in a bad mood today." Plaintiff's Deposition p. 173 lns. 23-24. Plaintiff testified that he verbally reported all of these incidents contemporaneously to Lieutenant Paglusch, although he filed no written reports or complaints.
Sometime in either November or December of 1995, the last and probably most shocking of Officer Young's exploits took place. Officer Young and several other female employees were in the dispatch room discussing a play they had all recently seen in St. Louis. Plaintiff's Deposition p. 81 lns. 17-21. During the conversation, plaintiff walked from his office into the dispatch room. At that time, plaintiff had his collar open and his tie clipped to the side because of the warmth in the office. Plaintiff's Deposition p. 81 ln. 4-7. One of the women involved in the conversation regarding the play asked plaintiff if he had seen it. Plaintiff's Deposition p. 81 lns. 17-21. Plaintiff stated that he had not, and walked back into his office. Id.
Apparently, Officer Young at that time began easing down the hallway towards plaintiff's office and shaking her legs. Clayborne Deposition p. 12 lns. 10-12. Phyllis Clayborne, another female employee, told Officer Young that she "better stop because [she was] going to mess around and [her] panties [were] going to get wet." Clayborne Deposition p. 12 ln. 13. Officer Young continued down the hall and into plaintiff's doorway. Clayborne Deposition p. 12 ln. 18. She then proceeded to stand in the doorway rubbing her crotch, and telling plaintiff that she was "hot and horny." Plaintiff's Deposition p. 85 lns. 1-3. Cynthia Anderson, another employee, walked past Young at that point and told her that her actions were offensive. Plaintiff's Deposition p. 85 lns. 8-13. Officer Young responded that the others might need to call the housekeeping department with a mop and bucket to clean up the puddle she had just left on the floor. Anderson Deposition p. 14 lns. 24-25; Plaintiffs Deposition p. 85 lns. 16-19; Crumpton Deposition p. 28 lns. 23-25.
Curiously, while all of these events were occurring, plaintiff never filed an internal written sexual harassment complaint against Officer Young. In fact, plaintiff never got around to complaining until July 30, 1996. Plaintiff's Exhibit 2. This July 30 written complaint followed a verbal complaint plaintiff lodged with Chancellor Gwendolyn Stephenson on July 2, 1996. Plaintiffs Deposition p. 199 ln. 14. Plaintiff's written complaint set forth the details of the Vaseline incident, the "large fingers" incident and the mop-and-bucket incident, all of which had occurred the previous fall. Plaintiff's Exhibit 2.
During all of the time relevant to this lawsuit, the Florissant Valley police department still had no chief. The college advertised and accepted resumes for the position from October 9 until October 20, 1995. Shew Affidavit ¶ 9. Plaintiff submitted his application October 13, 1995. Shew Affidavit ¶ 10. The college required that in order to be considered for the job, applicants have at least a bachelor's degree or the equivalent, and over three years of relevant full-time experience. Shew Affidavit ¶ 4; Exhibit 11. Because plaintiff failed to fulfill the minimum educational requirements, his application was summarily rejected at the pre-screening stage, Shew Affidavit ¶ 13. Plaintiff was never granted an interview for the job of chief during October, 1995. Florissant Valley *902 was unable to hire anyone at that time and the position remained open. Shew Affidavit ¶ 14.
Florissant Valley reopened the application process for chief of police between May 13 and May 24, 1996. Shew Affidavit ¶ 15. The minimum educational requirements had not changed, and plaintiff's application was again summarily rejected. Shew Affidavit ¶ 18. On July 18, 1996, Robert Stewart was hired as the new chief. Prunty Affidavit ¶ 7. Twelve days later, plaintiff filed his written harassment complaint against Officer Young. Plaintiff's Exhibit 2.
On August 5, 1996, Chief Stewart assumed his duties. Prunty Affidavit ¶ 8. At that time, Lieutenant Paglusch resumed the traditional lieutenant's duties, and returned to his original pay scale. Prunty Affidavit ¶ 8. Plaintiff also resumed his traditional duties as a police officer and returned to his original wage. Id.
Apparently word of the difficulties in the police department reached Irving McPhail, president of Florissant Valley. On August 14, 1996, McPhail issued a confidential memorandum to Chancellor Gwendolyn Stephenson. Plaintiff's Exhibit 19. In that memorandum, McPhail stated, "I want Vic Odom and Phyllis Clayborne removed from my campus. They are troublemakers and I don't need this element at Florissant Valley." Id. However, plaintiff was not removed from the campus at that time. Instead, the internal sexual harassment investigation process went forward.
On October 18, 1996, Director of Human Resources David C. Miller issued a memorandum regarding plaintiff's sexual harassment complaint, and a subsequent complaint filed by Officer Young. Plaintiff's Exhibit 18. The memorandum concluded that Officer Young's behavior towards plaintiff may have violated the college's policies regarding sexual harassment. Id. Similarly, while the District Sexual Harassment Committee concluded that plaintiff's behavior towards Officer Young did not violate the sexual harassment policy, the committee's investigating officer felt that it may have been somewhat retaliatory. Id. However, the memorandum went on to recommend no action be taken against any of the employees involved. Id. This conclusion was based on the fact that there had been no direct supervisor in the police department during the controversial period. Id. Instead of punishing or otherwise disciplining any of the employees involved, the memorandum recommended that the newly instated Chief Stewart go over Florissant Valley's sexual harassment policy with all members of the police department. Id. On October 28, 1996, plaintiff filed the underlying complaint with the EEOC. Plaintiff's Exhibit 7.

Discussion

I. Title VII Sexual Harassment
Plaintiff has alleged no direct evidence of sex discrimination by his superiors or any other decisionmakers in this case. Therefore, the Court must apply the burden shifting analysis formulated in McDonnell Douglas v. Green, which first requires the plaintiff to demonstrate a prima facie case of discrimination. 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff fails to state a prima facie case, the analysis ends in summary judgment for the defendant. If plaintiff states a prima facie case, the burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981). Upon the employer's production of such a reason, the plaintiff must demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age or sex discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).
The elements of a prima facie case of "hostile work environment" sexual harassment are as follows: (1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Callanan v. Runyun, 75 F.3d 1293, *903 1296 (8th Cir.1996).[3] Whether or not an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The Court must analyze these circumstances from the perspective of a reasonable person in the plaintiff's position. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Id.
In this case, plaintiff points to only six instances of inappropriate behavior by Officer Young. On the first occasion, the incident involving the Vaseline, when plaintiff questioned her, Officer Young explained that she was only joking. The comment involving plaintiff's fingers strikes the Court as the sort of comment that if expressed in a same-sex context might not have been shocking at all. The mop-and-bucket incident, while certainly immature and inappropriate, does not rise to the level of threatening, intimidating or humiliating behavior directed at plaintiff. The incident when Officer Young attempted to engage plaintiff in a conversation regarding her private life and dating experiences strikes the Court as having nothing to do with plaintiff's sex whatsoever. Finally, the incident involving the pastry, while again immature and inappropriate, seems to have been in no way intimidating or threatening. Notably, these incidents appear to the Court to have had no relationship to one another other than the fact that in all instances Officer Young was involved. In no other way do they appear to constitute a pattern of harassment directed at plaintiff or the terms and conditions of his employment.
The factor that strikes the Court as most important is the respective positions plaintiff and Officer Young occupied within the Florissant Valley hierarchy. This case differs drastically from the common situation where a superior creates or fosters an environment so harmful or threatening to a subordinate that it can be said to affect a term or condition of that person's employment. Cf. Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151 (8th Cir.1999). Here, plaintiff was apparently in a position of some authority in determining the terms and conditions of employment for the alleged harasser. Furthermore, it appears from the record that during the time in question the only person above plaintiff within the police department was Lieutenant Paglusch. When Lieutenant Paglusch was not working, plaintiff was in sole charge. Therefore, the Court concludes that, under the alleged facts, a subordinate employee could not have created an environment so pervasively hostile or abusive that it would have affected a term or condition of a reasonable supervisor's employment.
Perhaps Officer Young was a difficult co-worker. If the allegations reflected by the record are true, it certainly appears that she lacked an ordinary professional sense of propriety. It is understandable that plaintiff *904 would become frustrated by his apparent inability to have Officer Young discharged or reprimanded by any other member of the Florissant Valley bureaucracy. However, simply because plaintiff supervised an insubordinate employee who at times engaged in inappropriate behavior in the workplace does not give rise to a prima facie case of hostile work environment harassment. As no issue of fact exists as to the alleged circumstances, defendant is entitled to summary judgment as to plaintiff's claim of hostile work environment sexual harassment.

II. Title VII Retaliation
The Court will now turn to plaintiff's claims of retaliation. Plaintiff claims that on numerous occasions he complained to his superiors, including Lieutenant Paglusch, regarding Officer Young's behavior. On July 2, 1996, plaintiff verbally reported the before-mentioned incidents to Chancellor Gwendolyn Stephenson. On July 30, 1996, plaintiff filed an official harassment complaint against Officer Young. Plaintiff alleges that in retaliation for his complaints, defendant refused him an interview for the position of chief of police, demoted him from his position of acting chief, and that President McPhail issued a memorandum referring to him as a troublemaker and ordering him removed from campus (although plaintiff admits these threatened actions were never taken).
In order to state a prima facie case for retaliation, plaintiff must prove that: (1) he complained of discrimination; (2) defendant took adverse employment action against him; and (3) the adverse action was causally related to his complaint. Harris v. Sec'y, U.S. Dep't of the Army, 119 F.3d 1313, 1318 (8th Cir.1997). If plaintiff makes his prima facie showing, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions. Jackson v. Delta Special Sch. Dist. No. 2, 86 F.3d 1489, 1494 (8th Cir.1996). If defendant meets this burden, the fact finder is left to determine whether plaintiff can present evidence capable of proving that defendant's proffered reasons for acting are a pretext for illegal retaliation. Id.
Courts have long held that activity protected from retaliation goes beyond simply filing an EEOC complaint. It includes a range of activity, from making a specific complaint to management, as plaintiff did on July 2, 1996, or filing a formal complaint within a structure provided by the employer, as plaintiff did on July 30, 1996, to expressing a belief that the employer has engaged in discriminatory practices. See Cobb v. Anheuser Busch, Inc., 793 F.Supp. 1457, 1489-90 (E.D.Mo.1990). However, a complaint must be specific enough to put the employer on notice that plaintiff is actually complaining about sexual harassment. Otherwise, no causal link between the protected activity and the adverse employment action can be established. Id., 793 F.Supp. at 1490.
Plaintiff testified that he repeatedly made verbal complaints about Officer Young to Lieutenant Paglusch. He complained about her inappropriate behavior, her failure to collect evidence, and her inability to otherwise do her job properly. In addition, he occasionally reprimanded her himself or otherwise expressed disapproval of her actions. However, these general complaints about Officer Young's professionalism were not specific enough to put defendant on notice that plaintiff was complaining specifically of sexual harassment directed towards him. Rather, the first clear notice defendant had was July 2, 1996.
Since defendant never had notice of plaintiff's harassment complaints until July 2, 1996, at the earliest, no action taken against plaintiff prior to that time could be said to establish an inference of retaliation. Therefore, plaintiff's claims that defendant denied him interviews for the chief's position on October 13, 1995, and May 24, 1996, cannot be said to have been in retaliation for plaintiff's protected activity.
Even if plaintiff could prove that he made protected complaints of harassment prior to these dates, his claim of retaliation would fail with regard to defendant's failure to interview him for chief. Defendant asserts that plaintiff failed to meet the minimal educational requirements to be interviewed for the chief's position. Plaintiff provides no evidence to refute this other than his own, *905 self-serving, hearsay testimony that President McPhail told him not to worry about the educational requirements. Plaintiff's Deposition Vol. II p. 13 lns. 1-10. Plaintiff also asserts that he sought evidence through the discovery process that defendant had, on other occasions, hired individuals who lacked requisite educational credentials but that defendant failed to produce such evidence. Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts ¶¶ 46-60.
Upon review of the record, the Court notes that plaintiff never filed a motion to compel production of such documents. Therefore, plaintiff cannot rely on this evidentiary void to defeat a summary judgment motion. Nor can plaintiff defeat this motion with the above-mentioned hearsay evidence. See Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir.1993). Plaintiff's attempts to shore up this hearsay with further hearsay testimony from Richard DeLargey that President McPhail once spontaneously expressed satisfaction with plaintiff's job performance do not overcome the inherent reliability problems with hearsay evidence. See Plaintiff's Statement of Additional Uncontroverted Material Facts ¶ 14. Accordingly, even assuming plaintiff could state a prima facie case of retaliation with regards to the interview for the chief's position, plaintiff cannot refute defendant's asserted legitimate business reason for having denied him that interview.
Similarly, no causal relationship exists between plaintiff's supposed "demotion" from "Acting Lieutenant" and his complaints about Officer Young's harassment of him. Plaintiff testified that at some point he was given the title "Acting Lieutenant" by the Board of Trustees. Plaintiff's Deposition p. 28 ¶ 7. However, the only document plaintiff provides to establish that fact is a memorandum from Lieutenant Paglusch stating that the Board of Trustees had approved that plaintiff should "assume some of the responsibilities of lieutenant" including "some of the administrational responsibilities of [the] department." Plaintiff's Exhibit 8. Although plaintiff testified in his deposition that he had been given an earlier memorandum which granted him the title "Acting Lieutenant," that memorandum is not currently in the record.
Furthermore, plaintiff testified that the additional responsibilities referred to in Exhibit 8 were "police reports, supervising the shift and personnel, and investigations." Plaintiffs Deposition p. 26 ¶¶ 22-24. However, plaintiff also testified in his deposition that the only change that has occurred since that time was that after he complained about Officer Young, he "could still approve reports except those written by Officer Rochele Young, [and] that [he] could no longer supervise Officer Young, but the other officers [he] could, and that [he] was now like a lead supervisor to report to Lieutenant Paglusch or [Richard Delargey]." Plaintiff's Deposition p. 27 ¶¶ 17-23. Finally, plaintiff testified in his deposition that under Chief Stewart, "he [has] the administrative responsibility of the department in [the Chief's] absence...." Plaintiff's Deposition p. 219 lns. 8-14. In other words, the only change in the terms or conditions of plaintiff's employment which ever occurred, was that he was removed at some point from his supervisory capacity over Officer Young, the subordinate employee with whom he could not get along. The Court does not believe that an employer's actions in an attempt to improve harmony in the work place constitute adverse employment actions sufficient to state a prima facie case for retaliation.
It is true that plaintiff suffered a decrease in pay during this controversial time. However, assuming plaintiff could state a prima facie case for retaliation regarding the ten percent reduction in his pay, defendant has asserted a legitimate non-discriminatory reason for that action. During the period in which the Florissant Valley police department had no chief, Lieutenant Paglusch assumed some extra duties and received a corresponding pay raise. Similarly, during that period plaintiff also assumed extra duties. After defendant hired a new chief, there was no reason to continue paying plaintiff and Lieutenant Paglusch their enhanced salaries. Plaintiff offers no evidence suggesting that this reason is a pretext. Accordingly, defendant is entitled to judgment on this issue.
*906 Additionally, the Court does not believe that defendant's position paper, presented to the EEOC, can be considered an adverse employment action. That paper, which had an independent legal significance all its own, in no way affected any term or condition of plaintiff's employment. Furthermore, contrary to plaintiff's argument in his Memorandum in Response to Defendant's Motion for Summary Judgment, that position paper in no way conflicted with the findings of defendant's harassment committee. That committee found that Officer Young's actions may have constituted violation of defendant's internal sexual harassment policy. The committee further found that while plaintiff's treatment of Officer Young had not violated defendant's harassment policy, the committee's investigator believed that his actions as her supervisor may have violated some of defendant's policies regarding retaliation.[4]
This leaves only one remaining allegation of retaliation: the McPhail memorandum referring to plaintiff as a trouble-maker and ordering him removed from campus. Defendant argues that McPhail was not in plaintiff's line-of-command. Therefore, the argument goes, there can be no causal link between plaintiff's harassment complaints and McPhail's memorandum.
If acted upon, the memorandum could have constituted an adverse employment action sufficient to create an inference of retaliation whether or not President McPhail was within plaintiff's line of command. Actions short of termination may constitute adverse actions within the meaning of Title VII. Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997). But not everything that makes an employee unhappy is an actionable adverse action. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir.1997). Plaintiff admits that none of the action threatened in the memorandum ever came to fruition. In order to constitute an adverse employment action for purposes of Title VII, a negative evaluation or memorandum must be used as the basis for some action against the employee. Id., 116 F.3d at 359. As discussed above, no issue exists as to the fact that the terms and conditions of plaintiff's employment never changed as a result of his assertedly protected activity. Accordingly, defendant is entitled to judgment as to the issue of retaliation.

III. Missouri Human Rights Act Claims
Having found that plaintiff fails to state a prima facie case for harassment under Title VII, it follows that plaintiff also fails to state a case under the Missouri Human Rights Act, Mo.Res.Stat. § 213.010 et seq.[5] The test for harassment under the MHRA has developed under the same framework as that in Title VII. Finley v. Empiregas, Inc. of Potosi, 975 F.2d 467, 473 (8th Cir.1992). Applying the same analysis as above, the Court concludes that plaintiff cannot state a prima facie case of hostile work environment sexual harassment under the Missouri Human Rights Act.
Like Title VII, the MHRA also makes retaliation illegal. Mo.Rev.Stat. § 213.070. In fact, the MHRA establishes much broader boundaries for what constitutes protected activity and retaliatory action. See Keeney v. Hereford Concrete Prods., Inc., 911 S.W.2d 622, 624 (Mo.1995) (en banc). However, the MHRA, like Title VII requires a showing of causation. See Cross v. Cleaver, 142 F.3d 1059, 1076 (8th Cir.1998). And, although it appears clear that federal standards do not apply in exactly the same way to state statutory retaliation claims, it also appears to this Court that the McDonnell Douglas v. Green framework would still be followed in the *907 state courts. That is, upon the plaintiff's making of a prima facie showing, the burden of production shifts to the defendant to establish a legitimate business reason for taking the allegedly retaliatory action.
Having concluded that plaintiff's activities could be protected under Title VII, the Court finds that those activities would also be protected under the MHRA. Furthermore, the Court finds that defendant's actions could be considered retaliatory at the prima facie analysis stage. However, plaintiff fails to establish causation under the MHRA just as he does under Title VII. Furthermore, plaintiff has not produced any evidence whatsoever of pretext as to defendant's stated business reasons for denying him an interview for the chief's position and reducing his salary after hiring Chief Stewart.
That leaves as the only remaining issue in the case plaintiff's allegations that President McPhail's memorandum constituted retaliation under the MHRA. The Missouri Supreme Court has interpreted that statute broadly enough to include any retaliatory action whatsoever, whether or not it affects plaintiff's future employment or employability. See Keeney, 911 S.W.2d at 625. Under such a broad interpretation, this Court finds that an issue of fact exists as to whether or not President McPhail's memorandum was retaliatory.
However, having dismissed all of the federal claims which created original jurisdiction in this matter, the Court is left with the discretion to exercise or not to exercise supplemental jurisdiction over this matter. See 28 U.S.C. § 1367(c)(3). The Court declines to exercise jurisdiction in this matter which will involve nothing other than the application of a state statute. Accordingly, plaintiff's claim of retaliation under the MHRA, stemming from President McPhail's unfavorable memorandum, will be dismissed without prejudice to plaintiff's filing in the state courts.

Conclusion
Plaintiff's claims of harassment have no merit. The Supreme Court and the 8th Circuit have carefully circumscribed the interpretation of Title VII. Ordinarily, mere offensive utterances, even when coupled with gestures, do not create the type of abusive or hostile environment contemplated by state and federal employment discrimination law. The six isolated incidents plaintiff alleges do not rise to a level which demands protection under Title VII or the Missouri Human Rights Act. Furthermore, a subordinate employee's inappropriate jokes and language, unless horrific and threatening, cannot create in a reasonable supervisor, the belief that the terms and conditions of his employment have changed or are in jeopardy.
As to plaintiff's claims of retaliation, plaintiff fails, for the most part, to produce any evidence of causation necessary to state a prima facie case. Even assuming plaintiff could state a prima facie case of retaliation regarding defendant's failure to interview him for chief and plaintiff's decrease in pay, defendant asserts legitimate business reasons for its actions. Plaintiff, in turn, fails to meet his burden of production as to pretext.
For the most part, plaintiff simply fails to create an inference that retaliation occurred. However, plaintiff has produced an unfavorable memorandum which defendant's agent circulated shortly after plaintiff filed his internal sexual harassment complaint. That memorandum does not constitute an adverse employment action necessary to state a prima facie case under Title VII. However, as the MHRA defines retaliatory action much more broadly than Title VII, the Court finds that a material issue of fact exists as to whether that memorandum was issued in retaliation for plaintiff's complaint under the state statute. However, the Court declines to exercise supplemental jurisdiction over that single, state law claim.
IT IS HEREBY ORDERED, ADJUDGED and DECREED that Motion of Defendant St. Louis Community College, the Junior College District of St. Louis County, Missouri for Summary Judgment (# 18) is GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that Motion of Defendant St. Louis Community College, the Junior College District of St. Louis County, Missouri for Summary Judgment (# 18) on Count I of plaintiff's Complaint is *908 GRANTED and Count I is DISMISSED with prejudice.
IT IS FURTHER ORDERED that Motion of Defendant St. Louis Community College, the Junior College District of St. Louis County, Missouri for Summary Judgment (# 18) on Count II of plaintiffs Complaint is GRANTED insofar as that Count seeks relief for sexual harassment under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq., and Count II is DISMISSED with prejudice insofar as that Count seeks relief for sexual harassment.
IT IS FURTHER ORDERED that insofar as Count II states a claim under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq., for retaliation stemming from President McPhail's Memorandum ordering plaintiff removed from campus, defendant's Motion (# 18) is DENIED.
IT IS FINALLY ORDERED that as all claims creating original subject matter jurisdiction in this Court have been dismissed leaving supplemental jurisdiction in this Court over a single state statutory claim, this Court declines to exercise that jurisdiction, and the sole remaining claim is DISMISSED without prejudice to plaintiff's filing in the state courts.
NOTES
[1] Defendant does not admit that the facts surrounding plaintiff's allegations of harassment are true. However, defendant argues for the purposes of this motion that even if the facts alleged by plaintiff were true, he still could not state a claim for sexual harassment.
[2] The only complaint Lieutenant Paglusch remembered involved another incident which will be discussed later. Paglusch Deposition p. 83 ln. 6-12.
[3] Defendant presents a compelling argument that plaintiff's EEOC complaint was untimely filed as to the harassment charges. It appears from the record that the last harassing event alleged was the so-called "mop-and-bucket" incident. Although no witness recalls the exact date of that incident, all agree that it took place in either November or December, 1995. The latest dated reference to the mop-and-bucket incident that the Court finds in the record is "before Christmas" in 1995, as co-worker Tanya Crumpton testified in her deposition. Between December 24, 1995, and October 28, 1996, when plaintiff filed his complaint, 307 days elapsed. Therefore, the charge was not timely filed as to the alleged harassment. Plaintiff responds to this argument that the harassment by Officer Young was actually part of a "continuing violation" which culminated in retaliation against him for filing an internal complaint on July 30, 1996. As seven months elapsed between Officer Young's indiscretions and plaintiff's complaint regarding those actions, the Court does not believe that any retaliation for the complaint could have been "reasonably related" to Officer Young's alleged harassment. However, the Court does not believe it needs to engage in a "continuing violation" analysis, as the facts, even when considered in a light most favorable to plaintiff, do not state a claim for actionable sexual harassment under a "hostile work environment" theory.
[4] The Court makes this finding based solely on the language of the committee report. The Court has no opinion as to whether or not Officer Young ever engaged in protected activity which could give rise to a retaliation claim as defined in Title VII. The Court simply notes that defendant's sexual harassment committee stated that its appointed investigator found that plaintiff may have committed some acts of retaliation, as the defendant itself defines that term. Just as the committee's finding that Officer Young violated the harassment policy has no legal significance under Title VII, neither does the investigator's suggestion that plaintiff's actions towards Officer Young may have been retaliatory.
[5] Plaintiff's complaint refers to the Missouri Fair Employment Practices Act, but cites the Missouri Human Rights Act. The Court will assume plaintiff attempts to state a claim under that statute.